Herr et al., Appellants, *v.* Bard et al.

Argued November 27, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*John W. Beyer,* with him *Arnold, Bricker & Beyer,* for appellants.

*F. Lyman Windolph,* with him *H. Clay Burkholder,* for appellees.

OPINION BY MR. JUSTICE DREW, January 6, 1947:

The bill in equity filed in this case by plaintiffs, Leah B. Herr and Margaret B. Landis, seeks to compel their sister, Ida Catherine Bard, to produce and record two deeds dated March 18, 1935, for three tracts of

land in Upper Leacock Township, Lancaster County; to declare two deeds covering part of the same property (one dated July 25, 1939, and the other dated June 29, 1942) null and void; and to enjoin her from selling or in any way disposing of this real estate. The learned chancellor, after hearing on bill and answer, found against plaintiffs. The court en banc entered a final decree dismissing plaintiffs' exceptions and affirming the action of the chancellor. From the final decree, they appealed.[1]

The following are the pertinent facts: Plaintiffs are married daughters of Samuel Bard, who died on December 7, 1943. Defendant, Ida Catherine Bard, is his unmarried daughter, who lived with her father during all of her lifetime and took care of him during the latter part of his life. Samuel Bard, the father, was the owner of three pieces of real estate in Upper Leacock Township—(1) a tract of 1 acre and 50 perches, on which was located the residence in which he lived (referred to as the home property); (2) a tract of 3 acres and 55 perches, on which was erected a dwelling house and a row of four houses (referred to as the Andes property); and (3) a tract of 13 acres and 8 perches, with a warehouse erected thereon (referred to as the 13 acre tract). On March 18, 1935, he executed and acknowledged a deed for the home property and the 13 acre tract, in which he named his three daughters, plaintiffs and defendant, Ida Catherine Bard, grantees. That deed was never delivered or recorded, and was found in a box containing Bard's other papers by his executrix following his death. Bard also on July 25, 1939, executed and acknowledged two deeds—one, for the home property, wherein defendant, Miss Bard, alone was named grantee; and the other for the 13 acre tract, wherein all three daughters

---

[1] In view of our disposition of this case on the merits, it would serve no useful purpose for us to determine whether or not the joint appeal here taken is proper. See *Schuetz's Estate*, 315 Pa. 105. 172 A. 865.

were made grantees. The first of these deeds of July 25, 1939, was delivered to Miss Bard by her father, but not recorded by her until November 18, 1943; and the second was never recorded, but rather turned over to his attorney by Bard with instructions to deliver the same to the grantees upon his (Bard's) death. On June 29, 1942, Bard also executed and acknowledged a deed for the Andes property, in which Miss Bard alone was made grantee. This deed was delivered to her, and on November 18, 1943, it was duly recorded. The learned chancellor decreed that there was no delivery of the deed dated March 18, 1935, by Bard to the grantees, and, therefore, no title to the property described therein passed thereby; that there was no deed executed and acknowledged by Bard on March 18, 1935, conveying the Andes property to his three daughters, as contended by plaintiffs; that absolute title to the home and Andes properties vested in Miss Bard by deeds dated July 25, 1939, and June 29, 1942; and that a similar title to the 13 acre tract vested in plaintiffs and defendant, Miss Bard, as tenants in common, by the deed dated July 25, 1939, now in possession of Bard's attorney, with the direction that the same be recorded forthwith.

Plaintiffs present but two contentions for our consideration:—(1) that the chancellor erred in finding that there was no delivery of the deed covering the home property and the 13 acre tract, which deed was executed and acknowldged by their father on March 18, 1935; and (2) that it was also error for the chancellor not to permit them to testify to the alleged delivery of that deed to them by their father.

It is well established that delivery of a deed is necessary in order to render it legally operative (*Rynier Estate*, 347 Pa. 471, 32 A. 2d 736), and that delivery is to be inferred from grantor's words and acts evidencing an intention on his part to surrender his title to the property embraced by his conveyance, and to invest his grantee therewith (*Stiegelmann v. Ackman*, 351 Pa. 592,

41 A. 2d 679). It is the general rule that there is a presumption, in the absence of proof to the contrary, that a deed was executed and delivered on the day it was acknowledged: *Wolford v. Rimbey,* 318 Pa. 353, 178 A. 498.

Here the testimony shows that Bard, on March 18, 1935, executed and acknowledged this deed for the home property and the 13 acre tract before a Justice of Peace, who prepared the instrument at his request. The deed was witnessed by the Justice of Peace and his sister, and delivered by the former to Bard. Amos E. Burkholder, Esq., a reputable member of the Lancaster Bar, testifying for defendant, stated that he had been attorney for Mr. Bard from 1941 until the latter's death; and that he came to the witness' office on or about June 27, 1942, and inquired whether or not a deed previously executed, but never delivered, would be binding. When he was informed that it would not be, Bard said that he wanted to give a deed to his daughter, defendant, for the houses he had (referring to the Andes property); that he had already given a deed for the home property to her, but she could not live on that, and that he wanted her to have a comfortable living. Mr. Burkholder further testified that, pursuant to that conversation, he prepared a deed to Miss Bard for the Andes property, and that her father, as grantor, executed and acknowledged it in the attorney's office on June 29, 1942. This witness also stated that Bard, in company of Miss Bard, again came to his office on November 18, 1943. At that time, Bard, in this witness' presence, asked Miss Bard if she had her deeds of July 25, 1939, for the home property, and that of June 29, 1942, for the Andes property, and when she replied that she had, her father told her to get them so that they could be recorded. Miss Bard left the office and returned shortly with these deeds. She turned them over to Mr. Burkholder and he in turn recorded them for her that same day. The deed of March 18, 1935, was found among Bard's effects after his death by Miss Bard who was executrix of his estate.

From this uncontradicted testimony, it readily appears that there was ample competent evidence that Bard never parted with the custody of the deed of March 18, 1935, and that his words and acts definitely establish the fact that there was no intention on his part to divest himself of the title to the home property and the 13 acre tract by that writing.

The fact that Bard may have permitted his three daughters to collect the rents, pay the taxes and make certain repairs to his real estate during the period from 1938 to 1942 is not inconsistent with the finding that the 1935 deed never had been delivered. While this testimony adduced by plaintiffs was a factor to be taken into consideration, nevertheless the overwhelming weight of the evidence convinces us, as it did the learned chancellor, that there was no delivery of that deed and that Bard did not intend thereby to part with title. The facts found by the chancellor, and approved by the court en banc, are supported by the evidence, and, therefore, must be accepted by us: *Brinton v. Davidson,* 308 Pa. 371, 162 A. 905.

The chancellor was correct in holding that plaintiffs were incompetent to testify under the provisions of the Act of May 23, 1887, P. L. 158, section 5 (e) which states, "Nor, where any party to a thing or contract in action is dead . . . shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased . . ., be a competent witness to any matter occurring before the death of said party . . ." The deeds dated July 25, 1939, and June 29, 1942, under which the daughter, Miss Bard, claimed, had admittedly been signed, sealed, acknowledged, delivered and recorded. Prima facie their effect was to convey to her the interest of her father, now deceased, in the home and Andes properties. On the other hand, the existence of one of the two deeds, upon which plaintiffs based their claim,

had not been satisfactorily established and there had been no proof of the delivery of either of them. Clearly, then, plaintiffs had an adverse interest with respect to the deeds of July 25, 1939 and June 29, 1942, executed by their father during his lifetime, and under which Miss Bard held lawful title.

Decree affirmed, at the cost of Ida Catherine Bard.