548 A.2d 1270

**MarySusan VAN BUSKIRK, Appellee,**

v.

**Gary J. VAN BUSKIRK, Appellant.**

Superior Court of Pennsylvania.

Argued April 6, 1988.

Filed Oct. 14, 1988.

David W. Skutnik, Stroudsburg, for appellant.

Raymond P. Kashimba, Stroudsburg, for appellee.

Before WIEAND, McEWEN and BECK, JJ.

WIEAND, Judge:

In this divorce action, the trial court held that real estate, the record title to which was held by third persons who were not parties to the action, was marital property and directed that husband pay to wife a portion of the value thereof in exchange for a quitclaim deed conveying wife's interest in the real estate to husband. Husband appealed. We reverse.

MarySusan and Gary Van Buskirk were married in 1972 and separated in 1982. One child, Jessica, was born of their marriage. MarySusan was employed as a retail sales clerk, and Gary was employed as a construction worker. The parties did not own real estate and had lived in rented properties throughout their marriage.

Gary's parents, Roe and Jean Van Buskirk, owned a tract of land in Hamilton Township, Monroe County, on which their residence was located. The tract had been owned by the Van Buskirk family since 1925. In December, 1978, Roe and Jean Van Buskirk caused a deed to be prepared for 1.889 acres, a part of the larger tract on which their residence was situated, and named therein as grantees their son and daughter-in-law, Gary and MarySusan Van Buskirk. This deed was executed on December 29, 1978 in the office of a notary public, who also took the acknowledgement thereof. The deed, however, was not delivered; neither was it recorded. Instead, the deed was retained by the grantors. Roe Van Buskirk testified that he had not intended to deliver the deed unless and until his son and daughter-in-law, who were then experiencing marital difficulties, were able to get things "patched up" between them. He explained that the deed had been executed to give his son and daughter-in-law an expectation which would help solidify their marriage. Delivery was to occur in the future only if the younger Van Buskirks were able to stabilize their marriage.[1]

Following the signing of the deed, Gary Van Buskirk, with assistance from his wife and parents, expended time, effort, and some money in constructing a partially completed residence on the lot. Most of the financing, however, was arranged by Roe and Jean Van Buskirk, who personally borrowed the necessary money. The loan was secured by a mortgage executed by the elder Van Buskirks and

---

1. Although the Master recommended that Roe Van Buskirk's explanation for non-delivery of the deed be found "contradictory and not believable," the trial court did not make such a finding. Even if the witness's explanation were to be rejected, however, it would not alter the undisputed fact that the deed had not been physically delivered.

constituting a lien on the entire tract which they owned, including their residence, in Hamilton Township. Mortgage payments, including interest, were made by the elder Van Buskirks, who also paid taxes and the cost of insurance. The younger Van Buskirks, who occupied the partially completed dwelling, paid rent to Gary's parents. When the marriage of the younger Van Buskirks deteriorated further, Roe Van Buskirk determined that he and his wife would not make a gift of the real estate and destroyed the deed.

The trial court held, despite the undisputed fact that the deed had not been delivered, that a completed gift of the real estate had nevertheless been made. Therefore, the court directed that Gary Van Buskirk pay one-half the equity in the partially completed residence ($18,066.78) to MarySusan Van Buskirk, who was directed to execute a quitclaim deed conveying her interest in the real estate to Gary Van Buskirk.

This was error. It is essential to the validity and effectiveness of a deed that there be a delivery of the deed. See: *Fiore v. Fiore*, 405 Pa. 303, 174 A.2d 858 (1961); *Rynier's Estate*, 347 Pa. 471, 32 A.2d 736 (1943); *In re Estate of Darlington*, 364 Pa.Super. 75, 527 A.2d 159 (1987).

> To make a valid gift there must have been not only an intention to make it but to do so at the time and not in the future, and it must be accompanied by an actual or constructive delivery to the donee by which the donor released all dominion over the property and invested the donee with full title to and control over the same.

*Tradesmen's Nat'l Bank & Trust Co. v. Forshey*, 162 Pa.Super. 71, 73, 56 A.2d 329, 331 (1948) (quoting cases). See also: *In re Rogan's Estate*, 404 Pa. 205, 212, 171 A.2d 177, 180 (1961) (intent of donor to make an immediate transfer is essential). "Since it is impossible to make manual delivery of real property, delivery of the deed of such property is necessary to render it legally operative and to convey title. The deed becomes operative when delivered with the intent that it become effective as a conveyance...." 12 P.L.E. Deeds § 41. "[A] sufficient delivery

of a deed requires that there be a manifestation of the unequivocal intention of the grantor to relinquish all dominion and control over the instrument and to have it become presently effective as a transfer of title, so as to deprive the grantor of all authority over it or the right of recalling it.... There is no delivery in law where the grantor keeps the deed in his own possession with the intention of retaining it, particularly if he keeps possession of the property as well." 23 Am.Jur.2d Deeds § 131.

In the instant case, not only was the deed not delivered, but the elder Van Buskirks retained dominion over the instrument and the real estate. They used the land as security for money which they borrowed; and they also continued to pay taxes on the land and kept insured the improvements thereon.[2]

■ Moreover, if the elder Van Buskirks were to have their record title defeated in this marital action, it was essential, at the very least, that they be made parties to the action. Provision therefor has been made in Pa.R.C.P. 1920.34. Without such joinder, the trial court was powerless to construct a trust or otherwise divest the grantors of their title and vest it in their son and daughter-in-law. The note to Pa.R.C.P. 1920.34 makes this patently clear when it states that "[t]he joinder of persons other than husband and wife may be essential ... where persons other than the parties have an interest in property which is the subject matter of a distribution." See also: 1 Pa.Matr.Prac. Jurisdiction § 13:5.1; *Wolf v. Wolf,* 356 Pa.Super. 365, 514 A.2d 901 (1986) (trial court may declare resulting trust where record owners of real estate have been joined in matrimonial action).

The trial court, in this case, attempted to deprive the elder Van Buskirks of the title to their real estate without their having been joined as parties to the divorce action. At

2. The author of the dissenting opinion argues that there was a constructive delivery of the deed. However, there is no evidence to support this argument. Not only was the deed not recorded, but it was never placed within the control of the grantees. Instead, the grantors continually retained the deed and exercised dominion over it.

the very least, the court has thereby created a cloud on their title which, if not removed, will impair the marketability of the land. This was an abuse of discretion and clearly erroneous.

■ If unreversed, the trial court's order will also have unfair consequences for Gary Van Buskirk, the husband-appellant. He does not have title to the real estate which the trial court determined to be marital property. At best, he may have a possible action in equity against his parents to impose a constructive trust on the real estate. Whether he can produce evidence in addition to that appearing in the record of the divorce action which will enable him to pursue such an action successfully is entirely speculative. In the meantime, because he does not own the real estate, Gary Van Buskirk can neither sell the real estate nor use it as security for a loan to raise the sum of $18,066.78 which he has been directed to pay to his wife. The record demonstrates that Gary Van Buskirk, a construction worker, does not otherwise have assets which will enable him to pay this sum of $18,066.78 to his wife. The Divorce Code does not authorize courts, under the guise of equitable distribution, to impose an order to pay money which a party does not have the ability to pay. *Miller v. Miller*, 352 Pa.Super. 432, 443–444, 508 A.2d 550, 556 (1986).

■ Not only does the record fail to show that the husband can pay the amount which he has been directed to pay, but it also is uncertain, as we have observed, that he will ever be able to acquire title to the real estate which the trial court has held to be marital property. If he should find a way to raise the money which the court has directed him to pay, he still will not have title to the real estate. He will have nothing but an undetermined and speculative claim which he may be able to assert in a court of equity. Under the circumstances demonstrated by the record in this case, it is doubtful that he will be successful in wresting title from his parents in a future action. To place the entire risk of such an action upon appellant, under the circumstances of this case, was a manifest abuse of discretion.

On the record reviewed by this Court, the trial court's finding that the 1.889 acre tract in Hamilton Township was marital property is unsupported. The record title to that real estate is held by third persons who have not been joined as parties in the present action. To require the husband-appellant to pay one-half of the difference between the value of such real estate and the unpaid balance of a mortgage thereon executed and delivered by the third party owners was error.

The order of the trial court is modified by vacating the second paragraph thereof which directed Gary J. Van Buskirk to pay the sum of $18,066.78 to MarySusan Van Buskirk, who was directed to execute a quitclaim deed for a 1.889 acre tract in Hamilton Township, Monroe County.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting:

The sole issue in dispute in this divorce case is whether a parcel of real estate improved with a home is marital property subject to equitable distribution. The trial court held that the property was marital. I would affirm.

Section 401(e) of the Divorce Code, Pa.Stat.Ann. tit. 23, § 401(e) (Purdon Supp.1987), provides that real property acquired by either party during the marriage is presumed to be marital property. Husband contends that the real property at issue belongs to his parents and was never acquired by the parties. The trial court found that the property was acquired by the parties and therefore marital property subject to equitable distribution. I review this determination under an abuse of discretion standard. *Johnson v. Johnson*, 365 Pa.Super. 409, 529 A.2d 1123 (1987).

Husband and wife were married in 1972 and separated in 1982. During their marriage, the parties lived in various rental properties with their daughter and intended to purchase a home. They finally accepted the repeated offers of husband's parents to give them the vacant property adjoining the parents' home. His parents arranged for a deed

conveying the vacant 1.89 acres of real estate to the parties. His parents arranged to meet with the parties at a notary public on December 29, 1978, where the parents executed and acknowledged the deed conveying the real estate to husband and wife. At the time of the signing of the deed, the one dollar consideration in the deed actually passed hands between the parties and husband's parents. The father retained possession of the deed. He never recorded it and finally destroyed it when the parties separated.

After execution of the deed, wife engaged a surveyor to obtain the approval of a subdivision. Thereafter, the parties invested time, money and effort in building a house on the property. The construction was financed by a fluctuating mortgage on the property in the parents' name. During the period of their occupancy of the premises, his parents were responsible for all mortgage payments due. The parties paid to the parents monthly an amount equal to the mortgage payments due on the property. Wife trusted husband physically to make the monthly payments and thought he made them directly to the bank for a mortgage in the couple's name. The trial court determined that the home had a net equity of $36,133.55, and calculated the equitable distribution based on this value. On appeal, husband contends that his parents never gifted the property to the couple.

The trial court cites *Wolf v. Wolf*, 356 Pa.Super. 365, 514 A.2d 901 (1986), although it recognized that *Wolf* is not applicable to the case sub judice. In *Wolf*, the husband's parents purchased a home for the couple's benefit. The parents took title to the home and arranged for financing it while the children occupied the home, improved it and paid for all expenses incident to ownership. This court in *Wolf* held that the facts warranted the imposition of a resulting trust in favor of the divorcing couple, only after determining that the court had jurisdiction under Pa.Stat.Ann. tit. 23, § 301(a)(5). This subsection provides that the court has jurisdiction in cases of divorce over "[a]ny other matters pertaining to such ... divorce ... authorized by law and

which *fairly* and expeditiously may be determined and disposed of in such action." (emphasis added). In *Wolf,* the parents were additional parties and were afforded the same protections they would have had if the divorcing couple had brought a claim for resulting trust and unjust enrichment. In the case sub judice, the parents were not joined as additional parties. Therefore the theory of a resulting trust based on *Wolf* is not applicable.

The trial court found that the real estate was marital property on the rationale that the parents made an inter vivos gift of the real property. I agree. The criteria necessary to show an intervivos gift of real property were recently summarized in *In re Estate of Darlington,* 364 Pa.Super. 75, 78, 527 A.2d 159, 160 (1987):

> In order to effectuate an intervivos gift, there must be evidence of an intention to make a gift and a delivery, actual or constructive, of a nature sufficient not only to divest the owner of all dominion over the property, but also invest the donee with complete control over the subject matter of the gift.

Husband argues that there was no showing of his parents' intent to divest themselves of all dominion over the real estate and to invest the parties with complete control over the property.

The deed was prepared, executed, acknowledged but never physically delivered or recorded. The record reveals that the parents as donors intended to gift the property to the parties. The parents executed the deed before a notary public and in the presence of the parties. If the deed had been delivered, there would have been no question that title vested in the parties as donees. *City Stores Co. v. Philadelphia,* 376 Pa. 482, 103 A.2d 664 (1954). Therefore, my review focuses on whether there is sufficient evidence of actual or constructive delivery of the deed, the one requirement remaining in order to complete the gift and vest title in the parties.

The majority states that it is an undisputed fact that the deed had not been delivered. On the contrary, wife argues

and the trial court held implicitly that there was constructive delivery. Delivery may be inferred from the circumstances; it may be accomplished by words alone, by acts, or by both, and it is not necessary that actual manual delivery be proved. *City Stores Co. v. Philadelphia, supra, Abraham v. Mihalich*, 330 Pa.Super. 378, 479 A.2d 601 (1984). Delivery depends on the grantor's intention at the time the alleged gift is made as shown by his words, actions and the circumstances surrounding the transaction. *Abraham v. Mihalich, supra.* Whether there was constructive delivery is a question to be determined by the finder of fact. *Darlington, supra.*

The record is replete with indications that the parents intended to make a gift. The record is also replete with evidence that the parents and the parties treated the real estate as marital property. The husband and wife occupied and improved the property. They made monthly payments equivalent to mortgage payments. The father testified that no gift was intended. However, the master specifically found that the father's testimony was contradictory and unreliable. The trial court accepted the master's conclusion that the parents gifted the real property to the younger Van Buskirks and held that it was supported by the record. My review of the record reveals no abuse of discretion in this regard. The trial court having concluded that the real estate was marital property implicitly found that constructive delivery was accomplished. From the record as a whole it was reasonable for the trial court to infer that constructive delivery had taken place and that the father retained the deed for some other purpose, such as recording it.

Rather than consider whether the record supports the equitable distribution order of the trial court, the majority is apparently reviewing the record to find support for its own findings of fact. In so doing, the majority is inappropriately judging credibility, acting as fact finder, and finding facts contrary to those adopted below. For example,

the majority relies on portions of the father's testimony to characterize the parents' intent not to make a gift of the real estate. Yet, the master specifically noted that this testimony was unreliable. The majority also refers to the younger Van Buskirks' payments of rent, whereas the record reveals that the characterization of these payments to the parents is clearly disputed. Moreover, the portions of the record upon which the majority relies contradict the remainder of the record which is sufficient to support the trial court's findings about constructive delivery and the parents' intent to make a gift. The majority fails to apply the proper standard of review.

The majority's willingness to become the finder of fact even extends beyond the sole issue before this court on appeal: the characterization of the real estate as marital property. In its eagerness to bolster the record in support of its holding, the majority addresses an issue which the parties have not raised: the husband's ability to pay the equitable distribution award.

The majority sua sponte enters an area of the law which the parties have neither implicitly or explicitly raised; i.e. whether the husband has the ability to pay the equitable distribution order. The majority's discussion of this issue is dicta. It cites *Miller v. Miller*, 352 Pa.Super. 432, 508 A.2d 550 (1986), which finds an abuse of discretion in requiring a spouse to pay moneys which he could not reasonably be expected to acquire or borrow. The majority ignores *Morschhauser v. Morschhauser*, 357 Pa.Super. 339, 516 A.2d 10 (1986), which refined the holding in *Miller*, and does not support the majority's conclusion in the case sub judice. In *Morschhauser* the Superior Court affirmed the trial court's requiring payment of an equitable distribution award based on the rationale that the husband could produce part of the sum from his annual income and that he could borrow the remainder. It has never been the law in Pennsylvania, and it would be indeed unfortunate if Pennsylvania adopted the proposition, that an award of equitable

distribution is dependent on the spouse's immediate ability to pay.

In the case *sub judice* the majority cannot justify its conclusion that the husband does not have the ability to pay because the trial court did not consider the issue. The majority takes bits and pieces from a record which do not directly address this issue (because it was not raised) and weaves a scenario the accuracy for which it cannot vouch. To make matters worse, the majority ignores a salient finding in the record which would weigh against its conclusion. The finding is that in the future the husband would have opportunities to increase his accumulation of assets and to increase his earnings. Most pointedly, there is no testimony of record that the husband did not have resources available to satisfy the award, such as a loan from a bank or his parents. Even if the husband could not make immediate payment of the award, it is up to the fact finder to determine if he has the ability to pay out an award of equitable distribution over a period of time. The record is a blank on this issue. The majority's conclusion is speculative. The *Morschhauser* court realistically noted that a spouse's ability to pay out of earnings as well as to borrow are proper considerations for the trial court in awarding equitable distribution.

Since husband in the case sub judice has never argued that he is not able to pay the equitable distribution, he cannot be expected to have presented evidence in support of an argument first asserted by the majority in this court. Since the record does not even include his income after 1982 or his current living expenses, the finder of fact never had the opportunity to evaluate such data. Given the state of the record and this court's standard of review, I cannot find support for the majority's finding that the record demonstrates husband's inability to pay the award. I underscore that the majority's discussion of ability to pay is dicta.

I would affirm the trial court.