514 A.2d 901

**Rodney M. WOLF**

v.

**Gail Marie WOLF**

v.

**John E. WOLF and Grace V. Wolf.**

**Appeal of Rodney M. WOLF and John E. Wolf and Grace V. Wolf.**

Superior Court of Pennsylvania.

Argued May 20, 1986.

Filed Sept. 2, 1986.

Larry W. Wolf, Hanover, for appellants.

Walton V. Davis, Gettysburg, for appellee.

Before CIRILLO, President Judge, and TAMILIA and HESTER, JJ.

CIRILLO, President Judge:

This is an appeal from an order of the Court of Common Pleas of Adams County which dismissed appellants' exceptions and adopted the master's report regarding equitable distribution in bifurcated proceedings in an action for divorce. Judgment was entered upon praecipe in the amount of $6,927.55 in favor of defendant-appellee Gail Raab Wolf and against additional defendants-appellants John and Grace Wolf (hereinafter "parents"), and in favor of defendant-appellee and against plaintiff-appellant Rodney Wolf in the amount of $2,767.58 plus specified items of personalty. This timely appeal followed.

Rodney and Gail became engaged to be married in March 1976. The actual marriage occurred three and one-half years later in October, 1979. During their long engagement, Rodney and Gail both began collecting household items in contemplation of marriage. All of the items pur-

chased prior to marriage subsequently became the property of the marital entity.

In July, 1977, over a year after Rodney and Gail became engaged, Rodney approached his father and informed him that he wished to buy a home but was unable to obtain financing from a bank. Rodney's parents then purchased the home Rodney and Gail had previously inspected. The parents obtained a mortgage for 100 percent of the purchase price for which they put up their own home as collateral. Rodney and Gail have had exclusive possession of the house since the date of purchase. Though the couple did not move in until after their marriage, both Rodney and Gail did extensive work on the house in preparation for their eventual occupancy.

The couple made a number of substantial and costly improvements to the home both before and after their marriage. Prior to their marriage, they installed new aluminum siding, a well pump, kitchen and bathroom floors, insulation, kitchen cabinets, a suspended ceiling in the master bedroom, and a textured ceiling in the kitchen. After the pair married and moved into the home, they restored the foundation wall in the basement, installed new garage doors and electric door openers, and landscaped the surrounding yard area. The total cost of these improvements was approximately $15,555.00. Both Rodney and Gail contributed to payment of this bill.

In addition to these substantial improvements, Rodney and Gail were also responsible for all expenses associated with the maintenance of the home: mortgage payments, taxes, utilities, insurance, and settlement costs. None of the purchase price nor any expense related to ownership of the property was paid by John and Grace Wolf, Rodney's parents and the titled owners.

Upon the master's recommendations, the trial court determined that the facts of this case warranted the imposition of a resulting trust in favor of Rodney and Gail. In addition, the court found that the parents would be unjustly enriched if they were permitted to retain the property

without compensating Gail for her contributions to the improvements. Noting that both Gail and Rodney treated the property as their own, the court held that unjust enrichment would occur if the parents were to reap the benefits of the mortgage payments and improvements without reimbursing Gail. We agree; and accordingly, we affirm.

Appellants raise a number of issues on appeal: 1) whether Section 301 of the Divorce Code, 23 P.S. § 301, confers jurisdiction upon a master in divorce to recommend, and the trial court to confirm, a judgment imposing a resulting trust against real estate titled in the name of individuals who are not parties to the divorce action; 2) whether the trial court's adoption of the master's findings of fact support a judgment imposing a resulting trust against real estate titled in the name of additional parties; 3) whether the master's findings of fact adopted by the trial court support a judgment of unjust enrichment against the parents as additional parties; and 4) whether the trial court abused its discretion in compelling Rodney to submit to either of two buy-out options: a) pay Gail 50 percent of the value of all personal property in Rodney's possession, or b) sell all the personal property and pay Gail one-half of the proceeds.

■ We will first address the fundamental question of jurisdiction. The parents contend that Section 301 of the Divorce Code does not allow a court hearing a divorce action to hear claims of unjust enrichment or resulting trust against individuals not parties to the divorce. The parents allege that the master clearly exceeded his authority when he recommended the imposition of a resulting trust which radically affected their rights in the real property.

A review of the Rules of Civil Procedure and various sections of the Divorce Code indicates otherwise. Section 301 of the Divorce Code is the jurisdictional provision and it states in pertinent part:

(a) The courts of this Commonwealth ... shall have original jurisdiction in cases of divorce....

23 P.S. § 301. In addition, subsection (a)(5) provides that the court has jurisdiction over *"[a]ny other matters* pertaining to such . . . divorce . . . authorized by law and which *fairly and expeditiously* may be determined and disposed of in such action." 23 P.S. § 301(a)(5) (emphasis added). Based on the fact that Gail's claims for equitable distribution, resulting trust, and unjust enrichment directly hinged upon determination of the status of the property into which Gail and Rodney moved after their marriage, the matter was closely related to and obviously pertained to the divorce action. The nature of the parents' interest in the property needed to be resolved so that the property rights of Rodney and Gail could be determined. In addition, the matter was fairly determined in the divorce action. The additional parties, the parents, were free to present evidence and were afforded the same protections as had the claims for resulting trust and unjust enrichment been maintained separately. The parents had the opportunity to be heard and to question Gail.

Rule 1920.34 of the Pennsylvania Rules of Civil Procedure provides additional support. This rule states in pertinent part:

At any state of an action, the court may order the joinder of any additional person who could have joined or been joined in the action and may stay the proceedings in whole or in part until such person has been joined.

Pa.R.C.P. 1920.34 (Joinder of Parties—Divorce or Annulment Actions).

The note to this rule, states: "The joinder of persons other than husband and wife may be essential in claims . . . where persons other than the parties have an interest in property which is the subject matter of distribution." Pa.R. C.P. 1920.34 Note. Most of us do not operate in a vacuum. Therefore, even in divorce actions, which for the most part involve a husband and wife, situations arise when the divorce affects not only the children of the parties but those individuals with whom the parties own real estate or operate a business. Obviously, the rights of these people must

be protected. In addition, one spouse may not use the existence of these individuals on the periphery as a shield against fulfillment of his divorce obligation, such as child support, alimony, or equitable distribution.

While it is clear from our reading of the above-cited provisions that Adams County had jurisdiction over the parents as additional parties and was free to determine the claims of unjust enrichment and resulting trust, the question that now arises is whether the master in divorce had the authority to make recommendations concerning such issues. Appellants contend that the master lacks the authority to recommend a judgment imposing a resulting trust against the real estate of additional individuals not parties to the divorce.

We disagree. Rule 1920.51 of the Pennsylvania Rules of Civil Procedure clearly provides:

(a)(1) The court may hear the testimony or, upon its own motion or the motion of either party, *may appoint a master with respect to all or any of the matters* specified in subdivision (a)(2)(i) to hear the testimony and return the record and transcript of the testimony to the court, together with a report and recommendation.

Pa.R.C.P. 1920.51(a)(1) (emphasis added). This provision obviously allows that all actions for divorce or claims which may be joined with the action for divorce or any aspect of the action or claims may be referred to a master. We have already determined that the unjust enrichment and resulting trust claims were properly before the Adams County court. That court was therefore free to appoint a master to hear testimony on such claims.

■ Appellants next argue that the findings of fact do not support the imposition of a resulting trust. The parents allege that the doctrine of resulting trusts is founded upon a presumption of the intent of the parties at the time of the transaction in question. The parents argue that it was not their intention nor was any evidence presented to show their intention that Rodney and Gail be the beneficial own-

ers of the property in question. Additionally, they assert
that the absence of any written document evidencing this
intention is fatal to appellee's claims.

A review of the master's findings of fact and the record
reveals the propriety of the master's recommendations and
the trial court's imposition of the resulting trust. The facts
of this case present a classic example of resulting trust.
The case of *Grubb v. Delathauwer*, 274 Pa.Super. 511, 418
A.2d 523 (1980) is dispositive.

In that case, the Grubbs had executed an agreement to
purchase real estate but were unable to obtain financing.
After they were unsuccessful in obtaining financing, the
Grubbs turned to the Delathauwers. The Delathauwers,
Clara Grubb's parents, obtained the necessary financing
and titled the property in their names. In order to get the
mortgage, the Delathauwers used the recently purchased
property as collateral and offered another piece of real
estate which they owned as collateral security for the loan.
The Grubbs paid the closing costs, all mortgage payments,
utility payments, and taxes on the property. However, the
Delathauwers did pay the sum of $4,200.00 from the pro-
ceeds of the sale of another piece of property against the
mortgage indebtedness. The Delathauwers never had pos-
session of the property.

When the Delathauwers attempted to sell the property
while the Grubbs were living there, the Grubbs initiated an
action in equity seeking the imposition of a resulting trust
by the parents for their benefit. The trial court ordered
that the parents transfer legal title to the Grubbs upon the
Grubbs' repayment of the balance of the $4,200.00 which
they owed to the Delathauwers.

On appeal, this Court affirmed the decision of the trial
court. We stated that when "a transfer is made to one
person and the purchase price is paid by another, a result-
ing trust arises in favor of the person by whom the pur-
chase price is paid." *Grubb*, 274 Pa.Super. at 515, 418 A.2d
at 525 (quoting *Masgai v. Masgai*, 460 Pa. 453, 458, 333
A.2d 861, 864 (1975)). *Accord*, Restatement (Second) of

Trusts § 440 (1959). The Court concluded that the facts taken together provided ample support for the trial court's determination that the Delathauwers' financial intervention in the purchase of the property constituted a loan to the Grubbs, and that the Delathauwers held legal title to the property as trustees for the Grubbs.

The similarities between the case *sub judice* and *Grubb* compel us to find that the trial court acted properly in the instant case in imposing a resulting trust. The facts clearly indicate that the parents were to acquire title for the benefit of Rodney and Gail, and to hold that title only until Rodney and Gail were able to stand on their own financially. *See, e.g., Nirmaier v. Hamilton,* 467 Pa. 355, 356 A.2d 788 (1976).

The parents argue that the present case is distinguishable from *Grubb* on a number of points: 1) the Grubbs signed a written sales agreement to purchase the real estate prior to going to the Delathauwers for financing; 2) there is no evidence or finding that Rodney and Gail contributed to the settlement costs; and 3) Rodney and Gail were not married at the time of purchase. While these points are valid distinctions, we are not persuaded that they compel removal of the instant case from the dictates of *Grubb*.

More specifically, on the question of settlement costs, the undisputed testimony of Gail was that Rodney paid the settlement expenses. Additionally, while Gail and Rodney were not married at the time of purchase, they had been engaged to be married for over a year at that time. Clearly, *Grubb* is controlling in this case.

The parents next argue that the master's findings do not support an adjudication of unjust enrichment. They assert that Gail failed to prove by clear and convincing evidence her unjust enrichment claim. The parents contend that the master failed to make a finding that they knew Gail was independently contributing to the mortgage payments, taxes, repairs, utilities, and expenses or how much she did contribute if in fact she did.

 Essential elements of "unjust enrichment" are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment for value. *Mountain Medical Inc. v. City of Colorado Springs*, 43 Colo.App. 391, 608 P.2d 821 (1985). Clearly, the doctrine is applicable in the present case. It would be inequitable to allow the parents to retain the benefits of Gail and Rodney's work on the home without reimbursing the young pair for their expenses.

The doctrine of unjust enrichment is essentially equitable in nature. In the present case, equity requires us to direct the parents to make restitution to Rodney and Gail in the amount of the benefit conferred upon the parents.

The master was unable to make a determination of exactly how much Gail and Rodney contributed individually to the various improvement expenses, the mortgage payments, taxes, insurance, or utilities because the couple paid cash for the majority of these costs. However, Rodney and Gail were both employed at the time of purchase and throughout the remaining period. Therefore, it was reasonable for the master and the trial judge to conclude that both Gail and Rodney contributed to the payment of the bills on a 50–50 basis. The parents cannot avoid this claim of unjust enrichment by merely claiming that they had no idea Gail was contributing to the maintenance of the house. The parents knew that the mortgage payments, the utility bills, and the taxes on the property were being paid because they, as titled owners, never received notice of default on any of these items. While the parents may not recognize this as a benefit conferred upon them, payment of all the bills associated with home ownership would certainly be viewed by most homeowners as a benefit.

Finally, Rodney contends that the trial court abused its discretion in forcing him to choose between two buy-out options. Rodney asserts that it was error for the master not to make specific findings as to why a division of the

property could not be effectuated. He contends that Gail was interested in cash only and that the master acceded to her wishes.

We agree with Rodney that the trial court is required to make specific findings as to why a division of the marital property cannot be effectuated before making or approving a buy-out remedy in dividing property of the parties. *Barletta v. Barletta,* 506 Pa. 404, 485 A.2d 752 (1984). Therefore, the order of the trial court is reversed and the case is remanded for proceedings consistent with this opinion.

The judgments in favor of both Gail Raab Wolf and Rodney Wolf against John and Grace Wolf on the resulting trust and unjust enrichment claims are affirmed. The judgment of the trial court for equitable distribution of personal property is reversed and remanded to the trial court for specific findings as to why the personal property cannot be divided or why distribution of the household goods and furnishings in kind cannot be accomplished. Jurisdiction relinquished.